**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA,**

                      **Plaintiff,**

 v.

**FORTINO "TINO" PILIER,**                                 **25-CR-16 JLS**

                      **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. John L. Sinatra, Jr., in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.

## PRELIMINARY STATEMENT

The defendant, Fortino "Tino" Pilier ("the defendant"), is charged with having violated Title 18 U.S.C. § 1704, "possession of a U.S. Postal key," in a two count indictment.  Dkt. #7.  He has filed a motion basically seeking suppression of the use of evidence seized by law enforcement officers on October 23, 2024 as a result of an "illegal traffic stop" of a vehicle that the defendant was riding in as a passenger. Dkt. #12.  The government filed its opposition to this motion.  Dkt. #14.  After hearing oral argument on the motion, this Court granted an evidentiary hearing on the matter

which was conducted on May 19, 2025. No transcripts of the hearing were ordered by either party, and therefore the facts outlined in this Report, Recommendation and Order are taken from this Court's notes taken during the evidentiary hearing and the prior filings made by the parties herein.

## FACTS

Erie County Deputy Sheriff Raymond Diebel testified that he was assisting the Town of Hamburg Police in vehicle traffic patrol duty on October 23, 2024 and was patrolling near the Town of Hamburg Post Office. While on Camp Road in the Town of Hamburg, he observed a vehicle that he was following change lanes unsafely by not properly signaling such forthcoming change. As a result, he executed a vehicle and traffic stop of the vehicle based on a New York Vehicle and Traffic violation. It was approximately 11:00 p.m. on October 23, 2024 when this traffic stop was made. A second deputy sheriff arrived on the scene and assisted Deputy Diebel in this investigation.

After the vehicle in which the defendant was a passenger came to a halt, Deputy Diebel approached the vehicle on the driver's side and the other deputy approached the vehicle on the passenger side where the defendant was seated in the front seat of the passenger side. Deputy Diebel engaged in a traffic stop conversation with the driver of the vehicle while the other deputy was conversing with the defendant

when this deputy signaled to Deputy Diebel that he observed a "taser" under the front seat of the vehicle. When Deputy Diebel looked in that direction, he observed "what appeared to be a taser." As a result, both the defendant and the driver of the vehicle were ordered to exit the vehicle. Upon exiting the vehicle, the defendant immediately ran away and was chased by the deputy who had been conversing with him. During this chase, the defendant was observed throwing something away which later was recovered and determined to be contraband drugs.[1] The other deputy successfully apprehended the defendant and he was placed under arrest and a search of his person was conducted. This search by the deputy "resulted in the finding of two USPS arrow keys in his front pants pocket." One of the keys bore a serial number of an arrow key that was stolen from the Hamburg, New York letter carrier robbery which occurred on August 2, 2024. This arrow key could be used to open all blue collection boxes located within the Hamburg, New York zip code area. The other arrow key in [the defendant's] possession contained the serial number of a key issued to a Niagara Falls, New York area post office."[2]

      A subsequent search of the vehicle that the defendant was a passenger in resulted in the finding of a loaded weapon and contraband drugs, but what both deputies thought was a "taser" turned out to be a yellow and black box that "was about the size of a taser."[3]

---

[1] The defendant is not charged with any drug violations in this case.
[2] Affidavit of United States Postal Inspector Justin Simon sworn to November 4, 2024.  Dkt. #1, pp. 1, 4-5; ¶s 1, 13-14.
[3] The defendant is not charged with a weapon violation in this case.

The entire event lasted approximately three minutes.

## **DISCUSSION AND ANALYSIS**

The defendant argues that the deputies "did not have probable cause to search the vehicle in which [the defendant] was a passenger" and that the "subsequent arrest of the defendant was invalid" as well as the search of his person. Dkt. #12, p. 20, ¶s 42-43. This argument is rejected as being without legal merit for the reasons hereinafter stated.

The Court observed the demeanor of Deputy Diebel during his testimony at the evidentiary hearing and finds him to be a credible witness and his testimony truthful. No other witnesses testified for the government and the defense rested without presenting any testimony.

Although a loaded weapon and contraband drugs were recovered in the search of the vehicle in which the defendant was a passenger on October 23, 2024, this finding has no legal bearing on this Court's determination and recommendation since the defendant is not charged with drug or weapon violations. He is only charged with illegal possession of two USPS arrow keys (18 U.S.C. § 1704).

### A. The Vehicle and Traffic Stop

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The fact that the traffic offense in this case may have been minor in nature is also of no legal consequence for "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (police officer authorized to arrest driver where neither she nor her children were wearing seat belts); *see Arkansas v. Sullivan*, 532 U.S. 769, 771 (2001) (police officer authorized to arrest driver for speeding); *New York v. Class*, 475 U.S. 106, 118 (1986) (formal arrest permissible for a traffic offense under New York law); *United States v. Scopo*, 19 F.3d 777, 781-782 (2d Cir.) (probable cause to stop and arrest driver where police officers observed driver's failure to signal while changing lanes), *cert. denied,* 513 U.S. 877 (1994).

As the Court of Appeals stated in *Scopo*:

> When an officer observes a traffic offense - however minor - he has probable cause to stop the driver of the vehicle. (Internal quotation marks and citations omitted). The fact that the police [choose] to wait until [the defendant] stopped . . . to arrest him, or that traffic arrests were not necessarily part of their usual duties . . . does not negate the fact that

5

> they directly observed [the defendant] violating the traffic laws and thus had probable cause to arrest him.

*United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994).

The United States Supreme Court has also ruled that:

> An automobile stop is thus subject to the constitutional imperative that it not be '**unreasonable**' under the circumstances.   As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

*Whren v. United States*, 517 U.S. 806, 810 (1996) (emphasis added); *Prado Navarette v. California*, 572 U.S. 393 ( 2014).

The fact that the officers may have been engaged in an arrest which they normally would not effectuate, *i.e.*, traffic violations, such action by them did not negate the validity of the arrest of the defendant.   *United States v. Scopo* at 783; *See United States v. Villamonte-Marquez*, 462 U.S. 579, 593 (1983).

### B.   The Order to Exit the Vehicle

The law is well-settled that officers are permitted to order occupants from a vehicle during the course of a traffic stop without any independent basis to suspect criminal activity or danger to the officers. *See Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977); *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000) ("passengers and

6

drivers have no Fourth Amendment interest in not being ordered out of the stopped vehicle"); *United States v. Goss*, 2011 WL 1099979, (W.D.N.Y. 2011) ("an officer may order a passenger out of the car as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk") (citing *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997) ).

### C. Deputies' Mistake About "Taser"

As the testimony of Deputy Diebel established, both he and his fellow deputy were mistaken in believing that a "taser" was located under the front seat of the vehicle in which the defendant was a passenger. However, I find that based on the testimony and demeanor of Deputy Diebel, that mistake was reasonable under the facts relating to this traffic stop at 11:00 p.m. on October 23, 2024, and because it was a reasonable mistake, there was no violation of the defendant's Fourth Amendment rights. As the United States Supreme Court has stated in *Heien v. North Carolina*, 574 U.S. 54 (2014):

> As the text indicates and we have repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Riley v. California*, 573 U.S. 373, 382 (2014) (some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879

>(1949).  We have recognized that searches and seizures based on mistakes of fact can be reasonable.

*Id*. at 60-61.

### D. Flight of the Defendant

When the defendant exited the vehicle, he immediately began to flee from the officers.  This evidence of flight by the defendant certainly constituted a sign of "consciousness of guilt."

>From the very infancy of criminal litigation, juries have been permitted to consider flight as "evidence of consciousness of guilt and thus of guilt itself."  Wigmore, Evidence, s 276(4), at 122 (Chadbourn rev. 1979); *Harrington v. Sharff*, 305 F.2d 333, 338 (2d Cir. 1962). Such evidence surely may be considered as meaningful by police officers contemplating only a stop or an arrest, where the controlling standard is something less than "beyond a reasonable doubt". *People v. Kreichman*, 37 N.Y.2d 693, 699, 376 N.Y.S.2d 497, 339 N.E.2d 182 (1975). "(D)eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."  *Sibron v. New York*, 392 U.S. 40, 66-67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968); *see Husty v. United States*, 282 U.S. 694, 700-01, 51 S.Ct. 240, 241, 75 L.Ed. 629 (1931); *United States v. Gomez*, 633 F.2d 999, 1007 (2d Cir. 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981); *United States v. Maslanka*, 501 F.2d 208, 212-13 (5th Cir. 1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975); *People v. Kreichman, supra*, 37 N.Y.2d at 698-99, 376 N.Y.S.2d 497, 339 N.E.2d 182.

*United States v. Harley*, 682 F.2d 398, 401 (2d.Cir. 1982).

> The United States Supreme Court has expressly stated:
>
> Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.  *See United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).  We conclude Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further.
>
> But unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning.

*Illinois v. Wardlow*, 528 U.S.119, 124 -125 (2000).

### E.  Probable Cause for the Arrest of the Defendant

Probable cause exists if a law enforcement official, on the basis of the totality of the circumstances, has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *Panetta v. Crowly*, 460 F.3d 388, 395 (2d Cir. 2006)."

9

*United States v. Howard*, 489 F.3d 484, 491 (2d Cir.); *cert. denied* 552 U.S. 1005 (2007); *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Patrick*, 899 F.2d 169,171 (2d Cir. 1990).

> To determine whether an officer had probable cause to arrest an individual, [the court] examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *District of Columbia v. Wesby*, 583 U.S. 48, 56 – 57 (2018).The government further relies on Defendant's flight from his vehicle as evidence of consciousness of guilt. "[U]nprovoked flight upon noticing the police[ ] ... is certainly suggestive of wrongdoing and can be treated as suspicious behavior that factors into the totality of the circumstances."   *Illinois v. Wardlow*, 528 U.S.119, 124-125 (2000); *District of Columbia v. Wesby*, 538 U.S. 48, 59 (2018); *see also United States v. Vanhoesen*, 552 F.Supp.2d 335, 341 (N.D.N.Y. 2008) (ruling that while "flight alone is generally not sufficient to justify a stop or pursuit, [d]efendant's flight may be considered in conjunction with other attendant circumstances ... to establish probable cause"). "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Because the standard is fluid and contextual, a court must examine the totality of the circumstances of a given arrest." *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008) (citations and internal quotation marks omitted).

In this case, the totality of the circumstances establishing probable cause for the arrest of the defendant consist of the following.

10

1. A valid stop of the vehicle at 11:00 p.m. on October 23, 2024 by Deputy Diebel after having observed the vehicle in a Vehicle and Traffic Law violation.

2. The right of the deputies to conduct a short investigation of the violation of New York Vehicle and Traffic Law.   Approximately three minutes.

3. The observation of both deputies of what they believed, albeit mistakenly, to be a "taser," which is a dangerous weapon, under the front seat of the vehicle.

4. The immediate flight of the defendant after lawfully being ordered to exit the vehicle.

5. The observation of the defendant throwing or discarding something.

6. The capture of the defendant and arresting him thereby permitting a search of his person which resulted in the finding of two postal keys.

## **CONCLUSION**

Based on the foregoing, the police officers had probable cause to reasonably believe that the defendant was involved in some form of criminal activity which warranted his arrest and a search of his person. Therefore, it is recommended that the defendant's motion seeking to suppress the use of the two postal keys seized in the search of his person be denied in all respects.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:   Buffalo, New York
         June 18, 2025

                                        *S/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**